### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA,
### CHARLESTON DIVISION

| | | |
|---|---|---|
| BUILDERS MUTUAL<br>INSURANCE COMPANY, | ) | C/A No.: 2:11-cv-<u>164</u> - <u>DCN</u> |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | (*Declaratory Judgment*) |
| JAC 2000, LLC a/k/a JAC 2000 | ) | (*Insurance Contract*) |
| a/k/a JAC 2000, INC.; JOEL | ) | (*Non-Jury Trial* |
| MCVAY CHRISTY a/k/a JOEL | ) | *Demanded*) |
| M. CHRISTY a/k/a JOEL | ) | |
| CHRISTY; CHERYL L. SAVAGE; | ) | |
| ANDREW J. SAVAGE, IV; and | ) | |
| ASHLYN SAVAGE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

TO:   THE DEFENDANTS, JAC 2000, LLC a/k/a JAC 2000 a/k/a JAC 2000, INC.; JOEL MCVAY CHRISTY a/k/a JOEL M. CHRISTY a/k/a JOEL CHRISTY; CHERYL L. SAVAGE; ANDREW J. SAVAGE, IV; and ASHLYN SAVAGE, NAMED HEREINABOVE:

The Plaintiff, Builders Mutual Insurance Company, complaining of the Defendants, JAC 2000, LLC a/k/a JAC 2000 a/k/a JAC 2000, Inc.; Joel McVay Christy a/k/a Joel M. Christy a/k/a Joel Christy; Cheryl L. Savage; Andrew J. Savage IV; and Ashlyn Savage, respectfully shows unto this District Court as follows:

## PARTY AND JURISDICTIONAL ALLEGATIONS

1.      The Plaintiff, Builders Mutual Insurance Company ("Builders Mutual"), is a corporation organized and existing under the laws of a state other than the State of South Carolina, namely the State of North Carolina, with its principal place of business located in the City of Raleigh, State of North Carolina; however conducts its business of

selling and providing insurance coverage to insureds in South Carolina, in Charleston, County, and in the City of Charleston under the auspices of, through the authority granted by, and with the permission of the South Carolina Department of Insurance.

2.      The Defendant, JAC 2000, LLC a/k/a JAC 2000 a/k/a JAC 2000, Inc. ("JAC 2000"), is, upon information and belief, a corporation organized and existing under the laws of the State of South Carolina with its principal place of business located in the City of Charleston, Charleston County, South Carolina; and conducts its business operations in, among other places, Charleston County, South Carolina, including within the City of Charleston, South Carolina.

3.      The Defendant, Joel McVay Christy a/k/a Joel M. Christy a/k/a Joel Christy ("Mr. Christy"), is, upon information and belief, a citizen and resident of the City of Charleston, Charleston County, South Carolina and is included herein as a party-defendant since he has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on him, his heirs and successors, and his assigns.

4.      The Defendant, Cheryl L. Savage ("Ms. Savage"), is, upon information and belief, a citizen and resident of the City of Charleston, Charleston County, South Carolina and is included herein as a party-defendant since she has a significant interest in the outcome of this litigation and any decision rendered herein should be binding on her, her assigns, her heirs, and her successors.

5.      The Defendants, Andrew J. Savage IV and Ashlyn Savage (the "Doctors Savage"), are, upon information and belief, citizens and residents of the City of Charleston, Charleston County, South Carolina and are included herein as party-

defendants since they have a significant interest in the outcome of this litigation and any decision rendered herein should be binding on them, their heirs and successors, and their assigns.

6.     This is a declaratory judgment action brought pursuant to Rule 57 of the *Federal Rules of Civil Procedure*, and 28 *U.S.C.* §§ 2201-2202 (West Group 1993 and Thomson/Reuters West 2008).

7.     The jurisdiction of this District Court is based upon the diversity of the parties pursuant to 28 *U.S.C.* § 1332(a) (West Group 2005).

8.     The amount in controversy herein exceeds the sum of $75,000.00 exclusive of interest and costs.

9.     All matters and allegations herein contained are within the subject matter and personal jurisdiction of this District Court and venue is proper in this District Court and in the particular Division selected.

## FACTUAL ALLEGATIONS
### (*The Insurance Policy*)

10.     Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

11.     On or about 18 February 2006, Builders Mutual first issued a commercial general liability insurance policy, pursuant to Policy No. CPP 0023608 00, to JAC 2000 (the "CGL Policy") with a policy effective period running from 18 February 2006, until 18 February 2007, and as may have been renewed annually thereafter until such was cancelled, lapsed, or non-renewed.  (*A copy of the CGL Policy is attached hereto as* **Exhibit "A"** *and incorporated herein by reference*).

12.    The CGL Policy insured JAC 2000 for certain liability risks under their respective insuring agreements and, in turn, excluded certain liability risks pursuant to and through various policy exclusions.  All of the terms, conditions, obligations, and duties under and pursuant to the CGL Policy are incorporated herein by reference.

13.    The CGL Policy did not include or constitute a performance bond covering work performed by JAC 2000 and/or any other insured.

14.    The CGL Policy provided, in pertinent part, in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, through **SECTION I – COVERAGES**, pursuant to **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, via Paragraph **1.** entitled **Insuring Agreement**, as follows:

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

                        * * *

    **b.**    This insurance applies to "bodily injury" or "property damage only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in

whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, the "bodily injury" or "property damage" occurred, then any continuation, change[,] or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change[,] or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when an insured listed under Paragraph **1.** of Section **II** – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means the "bodily injury" or "property damage" has occurred or has begun to occur.

15.    The CGL Policy provided, in pertinent part, in the same coverage form, pursuant to the same section, through Paragraph **2.** entitled **Exclusions**, as follows:

This insurance does not apply to:

**a.**    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligate to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**    That the insured would have in the absence of the contract or agreement; or

**(2)**    Assumed in a contact or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent t to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for another party other than the insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

* * *

**j.    Damage To Property**

"Property damage" to:

* * *

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired[,] or replaced because "your work" was incorrectly performed on it.

* * *

Paragraphs . . . **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not already been physically injured, arising out of

**(1)**    a defect, deficiency, inadequacy[,] or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall Of Products, Work[,] Or Impaired Property**

Damages claimed for any loss, cost[,] or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal[,] or disposal of:

**(1)**     "Your product";

**(2)**     "Your work; or

**(3)**     "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy[,] or dangerous condition in it.

16.     The CGL Policy provided, in pertinent part, in the same coverage form, pursuant to **SECTION V - DEFINITIONS**, as follows:

**8.**     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate[,] or dangerous;

**b.**     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.**     The repair, replacement, adjustment[,] or removal of "your product" or "your work"; or

**b.**     Your fulfilling the terms of the contract or agreement.

                    * * *

**9.**     "Insured contract" means:

                    * * *

**f.**     That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.   Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

                    * * *

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions;

* * *

16.    "Products-completed operations hazard":

    a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)    Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

            (a)    When all of the work called for in your contract has been completed.

            (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one site.

            (c)    When that part of the work done at the site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service maintenance, correction, repair[,] or replacement, but which is otherwise complete, will be treated as completed.

* * *

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" [which] caused it.

\* \* \*

21. "Your product" means

    a. Any goods or products, other than real property, manufactured, sold, handled, distributed[,] or disposed of by:

        (1) You;

\* \* \*

"Your product" includes:

    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance[,] or use of "your product"; and

    b. The providing of or failure to provide warnings or instructions.

\* \* \*

22. "Your work" means

    a. Work or operations performed by you or on your behalf; and

    b. Materials, parts[,] or equipment furnished in connection with such work or operations.

"Your work" includes:

    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance[,] or use of "your work; and

    b. The providing of or failure to provide warnings or instructions.

17.    The CGL Policy provided, in pertinent part, in the endorsement entitled

**EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS**, as follows:

> This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work".
>
> This insurance applies to "your work" described in Paragraph **1.** and **2.** below performed by you or on your behalf.
>
> **1.**    The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of an Exterior Insulation and Finish System (commonly referred to as synthetic stucco or EFIS) or any Direct-applied Exterior Finish System (commonly referred to as DEFS), or any part or portion thereof, or any substantially similar system or any part or portion thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking, or sealants in connection with such a system.
>
> **2.**    Any design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of any exterior component, fixture[,] or feature of any structure if any Exterior Insulation and Finish System or substantially similar system is used on any part of that structure.

18.    The CGL Policy provided, in pertinent part, in the **FUNGUS, MOLD, AND**

**MILDEW EXCLUSION**, as follows:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> This exclusion is added under Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability**, under Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**, and under Paragraph **2.**, **Exclusions** of **Section I – Coverage C – Medical Payments**.

This insurance does not apply to:

**Fungus", Mold[,] and Mildew**

(1)     "Bodily injury", "property damage", "personal or advertising injury"[,] or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens;

(2)     Any sums that "you" become legally obligated to pay as damages because of the actual, alleged, or threatened growth, multiplication, dispersal, migration[,] or release of any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens at any time;

(3)     Any claim, "suit", or proceeding arising out of or relating in any way to the demand, requirement, order, direction, determination[,] or request that "you" or any other entity pay, repay[,] or reimburse sums expended or to be expended to test for, monitor, clean up, remove, study, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus", mold, mildew, "mycotoxins"[,] or any other conditions affecting indoor air quality;

(4)     Any loss, cost[,] or expense arising out of or relating in any way to "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens.

These definitions are added to **Section V – Definitions**

"Fungus" means any of the plant-like group of organisms that does not contain chlorophyll; they derive their food either by decomposing organic matter from dead plants and animals, or by parasitic attachment to living organisms, thus causing infections and disease. The word "fungus" includes molds, mildews, musts[,] and the rusts and smuts that infect grain and other plants.

"Fungus" does not include mushrooms, a product of agriculture for human consumption.

"Mycotoxin" means a highly toxic principle produced by molds or fungi.

19.     The CGL Policy provided, in pertinent part, in the endorsement entitled

**PUNITIVE DAMAGES EXCLUSION**, as follows:

> This endorsement modifies insurance provided under the following:
>
> Commercial General Liability Coverage Part **Section 1, Coverage A** and **B, 2. Exclusions**
>
> The following is added:
>
> This insurance excludes any claim for punitive or exemplary damages whether arising out of the acts of the insured, insured's employees[,] or any other person.

20.     The CGL Policy provided, in pertinent part, in the endorsement entitled

**EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF**, as follows:

> Exclusion **l.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:
>
> > **2.      Exclusions**
> >
> > This insurance does not apply to:
> >
> > > **l.      Damage To Your Work**
> > >
> > > > "Property damage" to "your work" arising out of or any part of it and included in the :products-completed operations hazard".

## FACTUAL ALLEGATIONS
### (*The Defective And/Or Faulty Construction*)

21.     Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

22.     Upon information and belief, sometime after 17 June 2004, a South Carolina limited liability corporation named CLC, LLC purchased certain real property known as Lot 76, Longborough which is now referred to as 50 Alberta Street, Charleston, South Carolina (the "Savage Residence").

23.     Upon information and belief, sometime either before or after 17 June 2004, CLC, LLC decided to develop the Alberta Street property and retained JAC 200 to construct a single-family residence on the property.

24.     Upon information and belief, sometime after 17 June 2004, JAC 2000 obtained a building permit from the City of Charleston and began construction of the Savage Residence on the property.

25.     In constructing the Savage Residence JAC 2000 used, upon information and belief, a number of subcontractors to do the work, including, but not limited to Loyd's Construction Company, LLC ("Loyd's Construction"), Eagle Roofing and Sheet Metal, LLC ("Eagle Roofing"), SA Floor Covering ("S Floors"), Alvin Zellous d/b/a Zellous and Sons Electric ("Zellous Electric"), Brown's Custom Painting ("Brown's Painting"), Duain Mitchell d/b/a Mitchell plumbing ("Mitchell Plumbing"), and American Roofing Concepts f/k/a Americo Roofing Concepts Enterprises, Inc. ("American Roofing").

26.     Upon information and belief, sometime prior to 29 November 2005, JAC 2000, by and through the use of the various subcontractors previously identified herein, completed construction of the Savage Residence and obtained a Certificate of Occupancy from the City of Charleston.

27.     Upon information and belief, once the Savage Residence was completed and once CLC, LLC had the Certificate of Occupancy in hand, CLC, LLC sold the Savage Residence to Ms. Savage on or about 29 November 2005.

28.     Upon information and belief, on or about 18 July 2006, Ms. Savage sold and/or otherwise transferred the Savage Residence to the Doctors Savage.

29.   Upon information and belief, the Doctors Savage moved into the Savage Residence some time immediately after July 16, 2006.

30.   Upon information and belief, after moving into the Savage Residence, the Doctors Savage became aware of certain faulty workmanship and/or construction defects in the Savage Residence resulting in significant and damaging water/moisture intrusion, caused by, but not limited to (a) improper and/or defective installation of the roof system, (b) improper and/or defective installation of the flashings, (c) improper and/or defective installation of the insulation in the crawlspace, (d), improper and/or defective installation of the interior insulation and/or failure to protect the mechanically cooled interior spaces from moisture intrusion, (e) improper and/or defective design and/or installation of the HVAC system, (f) improper and/or defective installation of the hardwood floors, (g) improper and/or defective installation of the anti-termite protection barrier, and (h) improper and/or defective installation of the HVAC duct system.

31.   Upon information and belief, the Doctors Savage reported the faulty workmanship and construction defect problems to, among others, JAC 2000 which, in turn, either disclaimed all responsibility and/or failed to make appropriate remediation and/or repairs to the Savage Residence.

32.   Upon information and belief, the Doctors Savage reported the faulty workmanship and construction defect problems to, among others, JAC 2000 which, in turn, reported the alleged problems to its various subcontractors previously identified herein who, in turn, either disclaimed all responsibility and/or failed to make appropriate remediation and/or repairs to the Savage Residence.

## FACTUAL ALLEGATIONS
### (*The Underlying State Court Litigation*)

33.     Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

34.     As a result of various construction defects and faulty workmanship found in the Savage Residence, the Doctors Savage eventually sued JAC 2000 and Mr. Christy in the Charleston County Court of Common Pleas through an action entitled *Andrew J. Savage, IV and Ashlyn Savage v. JAC 2000, LLC and Joel M. Christy*, Charleston County Court of Common Pleas, Civil Action 2007-CP-10-0567, filed on or about 7 February 2007 (the "Underlying Action") (*A copy of all relevant State Court pleadings filed in the Underlying Action are collectively attached hereto as* **Exhibit "B"** *and incorporated herein by reference*).

35.     The Complaint in the Underlying Action alleged causes of action against JAC 2000 for (a) negligence (*UA Complaint*, paras. 1, 5, 8-12, 14-22, including all subparts therein); (b) breach of implied warranties (*UA Complaint*, paras. 1, 5, 8-12, 23-29), and (c) violations of the *South Carolina Unfair Trade Practices Act* as codified in *S.C. Code Ann.* §§ 39-5-10, *et seq.* (West Group 2005 and Thomson/Reuters West Supp. 2008) (*UA Complaint*, paras. 1, 5, 8-12, 31-36); as well as a claim for piercing the corporate veil/alter ego against Mr. Christy.  (*UA Complaint*, paras. 1, 5, 8-12, 38-40).

36.     The Doctors Savage sought unspecified actual, consequential, treble, statutory, and punitive damages, as well as litigation costs against JAC 2000.

37.    On or about 11 April 2008, the Doctors Savage filed their Amended Summons and First Amended Complaint adding several new party-defendants in an action now entitled *Andrew J. Savage, IV and Ashlyn Savage v. JAC 2000, LLC; Joel M. Christy; CLC, LLC; Eduar Sanchez Arias; G and S Construction, LLC; Birch's Heating and Air, Inc.; John Martin d/b/a JBM Construction; and Mike Nolan d/b/a Mike Nolan Hardwoods* (Charleston County Court of Common Pleas Civil Action No. 2007-CP-10-567, filed on 11 April 2008).  (*A copy of all relevant State Court pleadings filed in the Underlying Action are collectively attached hereto as* **Exhibit "B"** *and incorporated herein by reference*).

38.    The Amended Complaint alleged causes of action against JAC 2000 for (a) negligence (*UA Amended Complaint*, paras. 1-4, 15-27, 29-37, including all subparts therein); (b) breach of implied warranties (*UA Amended Complaint*, paras. 1-4, 15-27, 39-44), and (c) violations of the *South Carolina Unfair Trade Practices Act* as codified in *S.C. Code Ann.* §§ 39-5-10, *et seq.* (*UA Amended Complaint*, paras. 1-4, 15-27, 70-75); as well as a claim for piercing the corporate veil/alter ego against Mr. Christy.  (*UA Amended Complaint*, paras. 1-4, 15-27, 77-79).

39.    On or about 1 October 2008, the Doctors Savage filed their Amended Summons and Second Amended Complaint adding Ms. Savage as a party-plaintiff and adding several new party-defendants in an action now entitled *Andrew J. Savage, IV and Ashlyn Savage v. JAC 2000, LLC; Joel M. Christy; CLC, LLC; Eduar Sanchez Arias; G and S Construction, LLC; Birch's Heating and Air, Inc.; John Martin d/b/a JBM Construction; Mike Nolan d/b/a Mike Nolan Hardwoods; Lily Investments, LLC; Comela*

*Investments, LLC; Sasacha, LLC; Tina F. Christy; Lynn J. Land; Mary Courtney Brooks; Meredith M. Land; Lauren E. Land; Stuart L. Cass; and Susan M. Cass* (Charleston County Court of Common Pleas Civil Action No. 2007-CP-10-567, filed on 1 October 2008).  (*A copy of all relevant State Court pleadings filed in the Underlying Action are collectively attached hereto as **Exhibit "B"** and incorporated herein by reference*).

40.    The Second Amended Complaint alleged causes of action against JAC 2000 for (a) negligence (*UA Second Amended Complaint*, paras. 1, 3-5, 26-41, 43-51, including all subparts therein); (b) breach of implied warranties (*UA Second Amended Complaint*, paras. 1, 3-5, 26-41, 53-58), and (c) violations of the *South Carolina Unfair Trade Practices Act* as codified in *S.C. Code Ann.* §§ 39-5-10, *et seq.* (*UA Second Amended Complaint*, paras. 1, 3-5, 26-41, 84-89); as well as a claim for piercing the corporate veil/alter ego against Mr. Christy.  (*UA Second Amended Complaint*, paras. 1, 3-5, 26-41, 91-93).

41.    JAC 2000, in October, 2008, tendered the claim to Builders Mutual and, in turn, requested Builders Mutual to provide it with a legal defense and indemnification vis-à-vis the Doctors Savage's claims.

42.    Builders Mutual provided JAC 2000 with a legal defense in the Underlying Action; however such provision of a legal defense was being done under a full and complete reservation of rights.

43.     Sometime in the lat Summer or early Fall of 2009, Ms. Savage and the Doctors Savage were able to resolve their dispute with JAC 2000 and all of the other parties and, in turn, entered into a Stipulation of Dismissal which was filed in the State Court on or about 5 October 2009.  (*A copy of all relevant State Court pleadings filed in the Underlying Action are collectively attached hereto as **Exhibit "B"** and incorporated herein by reference*).

44.     As part of the settlement of the claims asserted by Ms. Savage and the Doctors Savage, on or about 27 July 2009, JAC 2000 executed a Confession of Judgment in the amount of $129,140.00 in favor of Ms. Savage and the Doctors Savage which was, in turn, filed in the State Court on or about 25 September 2009.  (*A copy of all relevant State Court pleadings filed in the Underlying Action are collectively attached hereto as **Exhibit "B"** and incorporated herein by reference*).

45.     As further part of the settlement of the claims which Ms. Savage and the Doctors Savage asserted against JAC 2000 and others arising out of the construction of the Savage Residence, on or about 6 August 2009, Ms. Savage and the Doctors Savage executed a Full, Final, and Complete Release (the "Release") in favor of JAC 2000 and Mr. Christy.  (*A copy of the Full, Final, and Complete Release is attached hereto as **Exhibit "C"** and incorporated herein by reference*).

46.     The Release provided, in pertinent part, as follows:

> . . . we, Andrew J. Savage, IV, Ashlyn Savage, and Cheryl Savage (hereinafter referred to as "Releasors") upon payment of . . . $142,140.00 (hereinafter the "Settlement Sum") to us in hand paid in the form of . . $13.000.00 . . . cash and . . . $129,140.00 . . . in the form of a Confession of Judgment, by or on behalf of Joel Christy and JAC 2000,LLC (hereinafter referred to as "Releasees"), have released and

discharged, and by these presents do for ourselves and our heirs, executors, administrators, and assigns, release and forever discharge said Releasees and their officers, directors, agents, employees, assigns, successors, affiliates, subsidiaries, insurers[,] and all others in active concert and participation with then, both known and unknown, of and from any and all claims, demands, damages, actions, causes of action, or suits at law of in equity, particularly those claims asserted or which could have been asserted in [the Underlying Action] of whatsoever kind or nature, for or because of any matter or thing done, omitted[,] or suffered to be done by anyone prior to or including the [6 August 2009], on account of all injuries and damages resulting or to result from the design, construction, materials, and/or sale of the [Savage Residence].

## FIRST CAUSE OF ACTION
### (*Declaratory Judgment – No Coverage Under the CGL Policy*)

47.     Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

48.     The CGL Policy does not provide liability insurance coverage to JAC 2000 or any other alleged insured for any alleged "property damage" expected or intended from the standpoint of the insured.

49.     The CGL Policy does not provide liability insurance coverage to JAC 2000 or any other alleged insured for alleged "property damage" known by an insured or designated employee to have existed prior to the commencement of the applicable policy period.

50.     The CGL Policy does not provide liability insurance coverage to JAC 2000 or any other alleged insured for any alleged "breach of contract" by an insured.

51.     The CGL Policy covers "property damage" only when and if such "property damage" is caused by an "occurrence" as that term is defined in the CGL Policy.

52.     The CGL Policy defines the term "occurrence" as an "accident, including continuous or repeated exposure to substantially the same harmful conditions" which definition necessarily requires there to be an unintended, unforeseen, and/or fortuitous event giving rise to the damages claimed.

53.     The construction defect claims asserted by Ms. Savage and the Doctors Savage against JAC 2000 did not constitute an "occurrence" as defined by the CGL Policy since the construction defects were the natural and expected consequence of the negligent work, defective construction, and/or faulty workmanship performed by JAC 2000 and/or someone on its behalf and, therefore, the construction defects were not caused by either unintended, unforeseen, and/or fortuitous event as required by the CGL Policy and by South Carolina law.

54.     The CGL Policy specifically excludes liability coverage to JAC 2000 or any other alleged insured for, *inter alia*, alleged "property damage" to "your work" regarding that particular part of any property which must be restored, repaired, and/or replaced because "your work" was incorrectly performed on it.

55.     The Savage Residence constitutes the "your work" of JAC 2000.

56.     The CGL Policy specifically excludes liability coverage to JAC 2000 or any other alleged insured for, *inter alia*, alleged "property damage" to "your product" arising out of it or any part of it.

57.     The Savage Residence constitutes the "your product" of JAC 2000.

58.     The CGL Policy specifically excludes liability coverage to JAC 2000 or any other alleged insured for, *inter alia*, "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

59.    The CGL Policy defines the term "your work" to constitute work or operations performed by JAC 2000 or by some third-party on behalf of JAC 2000 and specifically includes material, parts, and/or equipment furnished by JAC 2000 or by some third-party on behalf of JAC 2000 in connection with JAC 2000' work or operations and/or the third-party's work or operations on behalf of JAC 2000.

60.    The CGL Policy defines the term "your product" to constitute any goods or products manufactured, sold, handled, distributed, and/or disposed of by JAC 2000, including any containers, materials, parts, and/or equipment furnished in connection with such goods and/or products.

61.    The CGL Policy specifically excludes liability coverage to JAC 2000 or any other alleged insured for, *inter alia*, any alleged "property damage" to "impaired property" arising out of a defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work" or a delay or failure by JAC 2000 and/or anyone and/or any company acting on its behalf to perform a contract or agreement in accordance with its terms.

62.    The CGL Policy specifically excludes liability coverage to JAC 2000 or any other alleged insured for, *inter alia*, any alleged sums which JAC 2000 or any other alleged insured may become legally obligated to pay as damages because of the:

> The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of an Exterior Insulation and Finish System (commonly referred to as synthetic stucco or EFIS) or any Direct-applied Exterior Finish System (commonly referred to as DEFS), or any part or portion thereof, or any substantially similar system or any part or portion thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking, or sealants in connection with such a system.

63.     The CGL Policy specifically excludes liability coverage to JAC 2000 or any other alleged insured for, *inter alia*, any sums which JAC 2000 or any other alleged insured may become legally obligated to pay as damages because of:

> Any design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service, repair, including remolding, correction, replacement[,] or service of any exterior component, fixture[,] or feature of any structure if any Exterior Insulation and Finish System or substantially similar system is used on any part of that structure.

64.     The CGL Policy specifically excludes liability coverage to JAC 2000 or any other alleged insured for, *inter alia*, any alleged sums that JAC 2000 becomes legally obligated to pay as damages because of the actual, alleged, or threatened growth, multiplication, dispersal, migration[,] or release of any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergens at any time".

65.     The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, any sums that JAC 2000 becomes legally obligated to pay as damages because of the actual, alleged, or threatened growth, multiplication, dispersal, migration[,] or release of any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergensss at any time".

66.     The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, "bodily injury" and/or "property damage" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any "fungus", mold, mildew, "mycotoxins"[,] or resulting allergensss.

67.    The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, any claim, "suit", or proceeding arising out of or relating in any way to the demand, requirement, order, direction, determination[,] or request that either JAC 2000 or any other entity pay, repay[,] or reimburse sums expended or to be expended to test for, monitor, clean up, remove, study, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "fungus", mold, mildew, "mycotoxins"[,] or any other conditions affecting indoor air quality.

68.    The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, any loss, cost[,] or expense arising out of or relating in any way to "fungus", mold, mildew, "mycotoxins"[,] or resulting allergensss.

69.    The CGL Policy specifically excludes liability coverage to JAC 2000 for, *inter alia*, " '[p]roperty damage" to "your work" arising out of or any part of it and included in the 'products-completed operations hazard.' "

70.    The CGL Policy, as interpreted by South Carolina law, does not permit insurance coverage for JAC 2000 and/or any of its subcontractors or others doing work on behalf of JAC 2000 at the Savage Residence for the removal, repair, and/or replacement of defective work whether done by JAC 2000 and/or by someone or some third-party on JAC 2000' behalf.

71.    Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and defective construction performed by JAC 2000 and/or on behalf of JAC 2000 by one or more subcontractors and/or sub-subcontractors at the Savage Residence does not constitute an "occurrence" under the CGL Policy as that term is

defined either by the CGL Policy and/or applicable South Carolina law in that the damages sustained were the natural and probable consequences of the alleged faulty workmanship and defective construction.

72.     Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of New Tradition at the Savage Residence does not constitute "property damage" under the CGL Policy as that term is defined either by the CGL Policy and/or applicable South Carolina law.

73.     Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of JAC 2000 at the Savage Residence, even if it did constitute an "occurrence" under the CGL Policy (which it does not), does not constitute "property damage" as that term is defined in the CGL Policy.

74.     Builders Mutual is entitled to a declaration by this District Court that the faulty workmanship and/or defective construction performed by or on behalf of JAC 2000 at the Savage Residence, even if it did constitute an "occurrence" under the CGL Policy (which it does not) and even if it did constitute "property damage" as that term is defined in the CGL Policy (which it also does not), that such damage was still excluded from coverage since it was "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard" as those terms are defined by the CGL Policy.

75.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Fungus, Mold[,] and Mildew Exclusion***, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by Ms. Savage and the Doctors Savage in the Underlying Action.

76.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Exclusion – Exterior Insulation And Finish Systems***, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by Ms. Savage and the Doctors Savage in the Underlying Action.

77.    Builders Mutual is entitled to a declaration by this District Court that the CGL Policy, pursuant to the endorsement entitled ***Exclusion – Damage To Work Performed By Subcontractors On Your Behalf*** completely eliminated any and all liability insurance coverage for any and all subcontractors contracted by JAC 2000 to provide materials, goods, or perform services or work on the Savage Residence.

78.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Contractual Liability*** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by Ms. Savage and the Doctors Savage in the Underlying Action.

79.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the **_Expected Or Intended Injury_** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by Ms. Savage and the Doctors Savage in the Underlying Action.

80.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the **_Damage To Property_** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by Ms. Savage and the Doctors Savage in the Underlying Action.

81.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the **_Damage To Your Product_** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by Ms. Savage and the Doctors Savage in the Underlying Action.

82.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the **_Damage To Your Work_** exclusion, do not obligate Builders Mutual to provide JAC 2000 Mutual or any other insured with a legal defense and/or indemnification for the claims asserted by Ms. Savage and the Doctors Savage in the Underlying Action.

83.     Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Damage To Impaired Property Or Property Not Physically Injured*** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by Ms. Savage and the Doctors Savage in the Underlying Action.

84.     Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including specifically the ***Recall Of Products, Work, Or Impaired Property*** exclusion, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense and/or indemnification for the claims asserted by Ms. Savage and the Doctors Savage in the Underlying Action.

85.     Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all applicable exclusions, do not obligate Builders Mutual to provide JAC 2000 or any other insured any insurance coverage regarding the claims of property damage set forth by Ms. Savage and the Doctors Savage in the Underlying Action.

86.     Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all exclusions, do not obligate Builders Mutual to provide JAC 2000 or any other insured with a legal defense to Ms. Savage's and the Doctors Savage' claims in the Underlying Action.

87.    Builders Mutual is entitled to a declaration by this District Court that the terms and conditions of the CGL Policy, including all exclusions, do not obligate Builders Mutual to provide JAC 2000 or any other insured indemnification for the Ms. Savage and the Doctors Savage' claims in the Underlying Action.

## SECOND CAUSE OF ACTION
### (*Declaratory Judgment – Release of All Claims*)

88.    Builders Mutual repeats and realleges each and every allegation heretofore contained in this Complaint as is fully set forth herein verbatim.

89.    As part of the settlement of the claims asserted by Ms. Savage and the Doctors Savage, on or about 27 July 2009, JAC 2000 executed a Confession of Judgment in the amount of $129,140.00 in favor of Ms. Savage and the Doctors Savage which was, in turn, filed in the State Court on or about 25 September 2009. (*A copy of all relevant State Court pleadings filed in the Underlying Action are collectively attached hereto as* **Exhibit "B"** *and incorporated herein by reference*).

90.    As further part of the settlement of the claims which Ms. Savage and the Doctors Savage asserted against JAC 2000 and others arising out of the construction of the Savage Residence, on or about 6 August 2009, Ms. Savage and the Doctors Savage executed a Full, Final, and Complete Release (the "Release") in favor of JAC 2000 and Mr. Christy. (*A copy of the Full, Final, and Complete Release is attached hereto as* **Exhibit "C"** *and incorporated herein by reference*).

91.    The Release provided, in pertinent part, as follows:

> . . . we, Andrew J. Savage, IV, Ashlyn Savage, and Cheryl Savage (hereinafter referred to as "Releasors") upon payment of . . . $142,140.00 (hereinafter the "Settlement Sum") to us in hand paid in the form of . . $13,000.00 . . .

cash and . . . $129,140.00 . . . in the form of a Confession of Judgment, by or on behalf of Joel Christy and JAC 2000,LLC (hereinafter referred to as "Releasees"), have released and discharged, and by these presents do for ourselves and our heirs, executors, administrators, and assigns, release and forever discharge said Releasees and their officers, directors, agents, employees, assigns, successors, affiliates, subsidiaries, insurers[,] and all others in active concert and participation with then, both known and unknown, of and from any and all claims, demands, damages, actions, causes of action, or suits at law of in equity, particularly those claims asserted or which could have been asserted in [the Underlying Action] of whatsoever kind or nature, for or because of any matter or thing done, omitted[,] or suffered to be done by anyone prior to or including the [6 August 2009], on account of all injuries and damages resulting or to result from the design, construction, materials, and/or sale of the [Savage Residence].

92.    By and pursuant to the Release, Ms. Savage and the Doctors Savage unconditionally and unequivocally released, among others, Mr. Christy, JAC 2000, and JAC 2000's insurers "from any and all claims, demands, damages, actions, causes of action, or suits at law of in equity, particularly those claims asserted or which could have been asserted in [the Underlying Action] of whatsoever kind or nature. . . on account of all injuries and damages resulting or to result from the design, construction, materials, and/or sale of the [Savage Residence]."

93.    Upon information and belief, Ms. Savage and the Doctors Savage no longer have any claims whatsoever against either JAC 2000 or Mr. Christy or against JAC 2000's insurers which may have arise out of the Underlying Action or any claims which could have been made therein stemming from the construction of the Savage Residence.

94.     By and pursuant to the Release, Builders Mutual does not have any obligation to satisfy any claims by Ms. Savage and the Doctors Savage associated with the Confession of Judgment executed by JAC 2000 and Mr. Christy in that such claims are barred by the Release as they arose out of the Underlying Action and/or out of the construction of the Savage Residence.

95.     Upon information and belief, Ms. Savage and the Doctors Savage, by unconditionally and unequivocally releasing JAC 2000 and Mr. Christy "of and from any and all claims, demands, damages, actions, causes of action, or suits at law of in equity," Ms. Savage and the Doctors Savage completely relieved JAC 2000 and Mr. Christy any further obligation for damages arising out of the construction of the Savage Residence.

96.     Upon information and belief, when Ms. Savage and the Doctors Savage, unconditionally and unequivocally released JAC 2000 and Mr. Christy, Ms. Savage and the Doctors Savage removed any obligation of any insurance company to pay any damages on behalf of JAC 2000 and Mr. Christy which arose out of or were related to the construction of the Savage Residence.

97.     Upon information and belief, Ms. Savage's and the Doctors Savages' unconditional and unequivocal release of JAC 2000 and Mr. Christy also constituted an unconditional and unequivocal release of any insurance carrier providing coverage to JAC 2000 and Mr. Christy.

WHEREFORE, the Plaintiff, Builders Mutual Insurance Company, having fully complained against the Defendants, JAC 2000, LLC a/k/a JAC 2000 a/k/a JAC 2000, Inc.; Joel McVay Christy a/k/a Joel M. Christy a/k/a Joel Christy; Cheryl L. Savage; Andrew J. Savage IV; and Ashlyn Savage, respectfully request this District Court to:

a.   Declare the faulty workmanship and construction defects claims asserted by Ms. Savage and the Doctors Savage against JAC 2000, arising out of and/or related to the construction of the Savage Residence do not constitute "property damage" as defined by the CGL Policy and the applicable law;

b.   Declare the faulty workmanship and construction defects claims asserted by Ms. Savage and the Doctors Savage against JAC 2000, arising out of and/or related to the construction of the Savage Residence do not constitute an "occurrence" as defined by the CGL Policy and the applicable law;

c.   Declare the faulty workmanship and construction defects claims asserted by Ms. Savage and the Doctors Savage against JAC 2000, arising out of and/or related to the construction of the Savage Residence were known to JAC 2000 and/or an authorized employee thereof prior to February 18, 2006, and, therefore constituted prior "property damage" excluded from coverage under the CGL Policy and the applicable law.

d.   Declare the faulty workmanship and construction defects claims asserted by Ms. Savage and the Doctors Savage against JAC 2000, arising out of and/or related to the construction of the Savage Residence are excluded by one or more sections of Exclusions "*a*", "*b*", "*j*", "*k*", "*l*", "*m*" and/or "*n*" of the CGL Policy;

e.    Declare the CGL Policy issued by Builders Mutual Insurance Company covering JAC 2000 does not require Builders Mutual Insurance Company to provide liability insurance coverage to JAC 2000 for the faulty workmanship and construction defects claims asserted by Ms. Savage and the Doctors Savage against JAC 2000, arising out of and/or related to the construction of the Savage Residence;

f.    Declare the CGL Policy issued by Builders Mutual Insurance Company covering JAC 2000 does not require Builders Mutual Insurance Company to provide a legal defense to JAC 2000 for the faulty workmanship and construction defects claims asserted by Ms. Savage and the Doctors Savage against JAC 2000, arising out of and/or related to the construction of the Savage Residence;

g.    Declare the CGL Policy issued by Builders Mutual Insurance Company covering JAC 2000 does not require Builders Mutual Company to provide indemnification to JAC 2000 for the faulty workmanship and construction defects claims asserted by Ms. Savage and the Doctors Savage against JAC 2000, arising out of construction of and/or related to the Savage Residence;

h.    Declare that the Release executed by Ms. Savage and the Doctors Savage completely and unequivocally released JAC 2000 and Mr. Christy and JAC 2000's and Mr. Christy's insurers from any faulty workmanship and construction defects claims asserted by Ms. Savage and the Doctors Savage against JAC 2000, arising out of and/or related to the construction of the Savage Residence;

i.    For the costs and disbursements of this action; and

j.    For such other relief as this District Court deems just and proper under the circumstances.

Respectfully submitted:

*NEXSEN PRUET, LLC*


By:      ***s/Stephen P. Groves, Sr.***
         Stephen P. Groves, Sr., Esquire
         Federal I.D. No.   2490
         205 King Street, Suite 400
         Charleston, South Carolina  29401
         Telephone:        843.720.1725
         Telecopier:       843.720.1777
         E-Mail:           SGroves@nexsenpruet.com

*Attorneys for the Plaintiff,*
    *Builders Mutual Insurance Company*

Charleston, South Carolina

21 January 2011

NPCHAR1:627980.1-PG-(SPG) 032595-00071